May it please the court, I am Joshua Glellen appearing on behalf of Mr. Kealoha. I would like to reserve a couple of minutes for rebuttal. The administrative law judge found that Kealoha's gunshot injury was not compensable because it was not the result of an instantaneous impulse without pre-planning or forethought. As a matter of law, that is simply the wrong legal standard for avoidance of the willful intention to injure or kill oneself or another defense that the Longshore Act establishes. The construction of that defense in general workers' compensation law, which the Benefits Review Board has sometimes recognized, was not recognized by the Benefits Review Board. That is, the general principle of workers' compensation law, which has been adopted under the Longshore Act, although the authorities are sparse, it's never been rejected, does not look for an instantaneous intent without pre-planning. Yet that is all the ALJ actually addressed. Not only in her first decision, which the board reversed and kicked it back, telling her she had to look at willfulness, not merely intent, and yet on remand what she looked at again, what she relied on. What's the difference between intent and willfulness? Well, I think that's critical, and the word willful is not merely surplusage, so the courts have for close to a century now construed it as a workers' comp defense to mean that an intent to kill oneself is not willful if the succumbing to the impulse is a product of, including in part, a reduced ability to resist that impulse because of the original injury. We're talking about not a suicide attempt that is the original injury. That is, you come to work one day and perhaps you know the boss is about to come in and either fire you or tell you that you've really messed up and you just can't face it so you commit suicide there. No, this is a suicide attempt as a consequence of an earlier on-the-job traumatic injury. And Mr. Kealoha's was very dramatic, and his ability to reduce impulses was not very strong even before that fall. Didn't the experts sort of disagree on that point that you just made right now? Not really. Dr. Bussey, the defense expert, testified. Let me get his... I mean, was there... there was some disagreement, wasn't there? Yes. The disagreement was over whether this was preplanned or an instantaneous impulse. The claimant's expert thought that it was instantaneous, that it was... that impulse arose and he did it with no preplanning. The defense expert said, no, there's an awful lot of evidence here and I... it is my opinion to a reasonable medical certainty that yes, this was preplanned. He left home that morning telling his wife goodbye, and we do not contest the inference that that expert and the ALJ drew from that. But yes, when he said that, it meant, I'm going to do away with myself. Nor, of course, do we contest that when he put a rifle under his chin and pulled the trigger, his intention was indeed to kill himself. It was an intentional act. But as the board told the ALJ in its first decision, kicking the case back to the ALJ, that's not the critical question. Nor, again, is the factor which she considered determinative even on remand, that it was not instantaneous, that there was preplanning involved. That's not determinative either. So what would you have us tell, if we were to adopt your argument, what would we tell the board or the ALJ to do on remand? I'm not sure there's even a need for a remand since I... Answer the question first and then the next question could be whether you think there's a need. Thank you. Which I will ask as soon as you answer this question. I would have you say the test is the chain of causation test, not the instantaneous impulse test, which is what the ALJ applied. So what are we to tell the ALJ to do? To address... Well, I think she already in her decision on remand found that the injury and the stresses associated with litigation... Employment related. Yes. Okay. Were factors that put him over the edge. Perhaps the straw that broke the camel's back. But the factors that put him over the edge. The edge wasn't very high because he didn't have very much resistance to impulsive action to begin with. But she's already made that finding and that, to anticipate a question, if I may, is why I think there's no remand required. She made that finding explicitly in her decision on remand. What I hope the court will do is to say, as the one federal judicial decision on point under the Longshore Act, this district court decision 50 years ago in terminal shipping against Traynor in the District of Maryland said, the general workers' compensation law says we're not looking at irresistible impulse in the sense that might be relevant to the defense against a claim under a life insurance policy or in some jurisdictions that sometimes the relevant standard for criminal responsibility under an insanity defense hasn't worked out very well there and it's generally been rejected where it was originally adopted. But that's not the test. As terminal shipping said, there are these two possible tests and the test that comes from criminal law and insurance defense is not the test for workers' compensation. But you say that she actually did apply the right test but didn't, as a result of that, didn't then come to the right conclusion about liability. No, I think she simply applied the wrong test. I thought you said that she did find first. She did. Now tell me exactly, so we aren't confused, where in her decision did she say what was right? In the first part of her decision on remand, which is on page 60 of the excerpts, the bottom of the page, no, I'm sorry, the middle of the page, since respondents on Psychiatric Expert agreed with Let us get to the page. Okay, excuse me. And what page of the decision is it? It is page 17 of her decision on remand. Starting since respondents on Psychiatric Expert? Yes. Okay. Let me see if I can find it precisely. Accordingly, I find that the claim of suicide attempt was work-related. Under, excuse me. She did that. So in your view, that means that you prevail? Indeed, exactly. That's why I believe no remand is necessary. She's already made what I think is the critical finding under the appropriate legal test. That is, the two tests again are this irresistible impulse test and the chain of causation test. That's how the court in that terminal shipping. And what are you testing for? We're testing for willfulness of the intent. We acknowledge intended to kill himself. No question. I mean, I hope it didn't take all these proceedings to determine that, but that's essentially what the ALJ determined, that that was not just an instantaneous in the later part of her decision. Okay, the decision on remand. Like her original decision, what she finds is that it was preplanned. This was not an instantaneous intent that he succumbed to, but something that he had been considering. I would say he had a recurrent impulse and finally succumbed to it, but I don't think any of that is the critical question under the appropriate test. The appropriate test is, was the fact that his will was overcome by the impulse, traceable to the earlier employment injury? And I think she has found here that it was. Well, later on in the decision where she states that it wasn't the immediate impulse, she also says that the pending deposition of fear that he's losing his mind, he rejects Dr. Ross' assessment that those were dominating factors. Yes. And he says there are other factors that were more important. What's the effect of that legally? I'm sorry, where are you now? Page 68. Oh, okay. Well, that is this decision. Yes, I think that has no effect. As the board properly held in its first decision, that is, in her first decision, that's pretty much all she said. Yes, that made him worse, perhaps, but the stressors that caused him to do this were principally his family problems and money problems. I think she also referred to his drug problems, but by the time, I think it's uncontested, and I believe she found in passing that he had stopped alcohol and marijuana six or eight weeks before the suicide attempt. So that was not one of the stressors at that time, but it's not something that she relied on as having been one of the things that caused him to succumb to the impulse. I'm not sure if you've answered. Basically, your argument then, as I understand it, is as long as it's work-related and it hasn't been eliminated, even though there are other factors that may be more important, you still prevail. Yes, and I think that the latter part of that is implicit in the very well-established aggravation rule of workers' compensation law, which, again, this court has articulated many times, that to make something worse is to cause it. It's materially worse here in the sense that at least it was the straw that broke the camel's back. The rest of the load that was already on the camel before that last straw was put there is not relevant for workers' compensation purposes to whether it was that last straw that broke the back. That's how workers' compensation law works in the absence of a statutory provision, which some states now have, that it must be the predominant cause or the major cause. There are various formulations of it in different states' laws. The Longshore Act does not and never has had such a provision. Let me ask you another question. This is an interesting case. You don't see many of these cases. Let me ask you, the first remand when the board sent it back to the ALJ, the board said on remand you have to make a determination about whether he was capable of forming the intent or capable of having the willingness. I don't recall exactly what the board said, but it was sent back for further workup, further consideration of his ability to form the intent I think is what it was. Yes. You argue in your brief that he didn't, she didn't do that. Correct. Does that make a difference according to the argument you're making now? Well, yes, because what the board said was you must address it, they actually said you must address it in terms of whether he had the capacity to form the will to do it. She completely fails to do that. Now, the board's expression was not a very good one, and it has sometimes articulated not as the test but as a test this irresistible impulse business, which is pretty imponderable, and in fact the defense psychiatrist, the defense expert witness said, well, I don't know what that means. It's not a medical term, and that's for the judge to figure out what that means. Well, actually I think it's for this court to determine what it means, and I think there are prior, there is again a longstanding general workers' compensation answer to this, which is provided for the Longshore Act in this terminal shipping decision half a century ago. To choose between the irresistible impulse test and the chain of causation test, general workers' compensation law has made that determination, and that's what the test is, but although the board did not well articulate that in remanding it, it did tell her she had to address it in terms of willfulness, and she did nothing of the sort. Now, one final question that you tried to answer before. Why is it you believe that we need not remand the case and can decide it ourselves? I'll try again and appreciate the opportunity to do so. Because she has already determined that his succumbing to the impulse was the result of a lot of stressors, one of which was the injury and its sequelae. So she has already made what I think is, under the appropriate legal test, the critical finding. That's why I think it requires no remand. Thank you. Thank you. May it please the Court, Tom Fitzhugh for Leeward Marine and Hawaii Employers Mutual Insurance Company. This case really, of course, I agree with Mr. Gillelan, does not require a remand, but hopefully you can deny the petition for review and put this decades-old case to rest. Suppose we grant the petition for review. Does it still not need a remand? Oh, it does need a remand. And the question, because if you look at it, well, I'm saying for a different reason you don't need to remand it. But if you buy the argument, and the problem with counsel's argument, quite simply, is it overworks Section 3C, which is the basis on which the benefits were denied, which is you don't pay benefits if the injury is the result of a willful intent to injure or kill yourself. So the 20A finding that – Then you're saying you could never have benefits in a suicide case. That's not correct, Your Honor, but – Isn't that always a willful intent to kill yourself? It's not always willful, and there are a few cases that deal with that issue, but that's not this one. In this case, the ALJ's findings were absolutely clear, and even the board – Just tell us first, what is the difference in a suicide between a willful intent to commit suicide and some other intent? I don't believe there's really any difference. I think the intent – in other words, once the intent is established, the – I'm not trying to define an answer for all suicide cases. I don't understand your position. You say, yes, you can recover in certain cases when you commit suicide, and some suicides are not willful intents, and some are. Is that right? I believe that is correct, but that's the – What kind of suicides are willful intents, and what kind aren't? For example, in the board's opinion, they cite a couple of cases. The Boris v. TEIE case in 1951 said where the employee lacked the ability to stop himself from taking his own life. So if he lacks the ability to stop, then he lacks the willfulness. And when do you know that you lack the ability? Your Honor, I don't know. That's where expert testimony comes in. I'm not a psychiatrist. In this case, what happened – I assume that in most suicide cases, you lack the ability to not commit suicide. No, sir. I mean, excuse me. I mean, with all due respect, I think that's wrong. I have a lot of respect. This is just a question. No, the fact is, apparently – and I heard some of this in Mr. Gilwell's argument – but the issue is, did he have the ability to form the intent? And that's the question that he said is the critical one. Did he have the ability to form the intent? And the case law suggests there are some cases – some, not this one – where a person doesn't even have the – he's so muddled, so confused, so he doesn't really have the ability to form the intent. But I'm not here to try to discuss the psychiatric possibilities because that's not this case. In this case, we have a clear finding of absolute intentional and no finding of inability. In other words, he's trying to create a rather false dichotomy here, but in his argument that he made repeatedly just now, he said that the reason he has to recover is because of Section 20A and the presumption and the work-relatedness. But he didn't discuss at all the Section 3C part that says no matter what, work-related or not, if the action results from the willful intent to injure yourself or another, you don't get conked. And that's what the ALJ in two decisions here found. And this standard review is basically the court looks at the ALJ decisions. The board gets no deference for its legal opinion analysis. Our argument has been consistent that the board erred legally in the first decision by trying to force the Section 20A presumption onto this suicide attempt because that, in fact, Wait a minute, that's not supposed to, the presumption can drop out. Well, there are two presumptions. There's a presumption of work-relatedness and there's a presumption that it wasn't willful. But what happened here is in the second opinion, she said the work-related presumption was not rebutted. She only got to that point because the board told her she had to, that she had to actually find it was work-related. Then she could see whether or not there was a rebuttal. Our position is that the 50-year-old case that you control is not one from a district court in Maryland, but from this court, the Sear v. Crescent Warehouse Court, which says when you're looking at a secondary incident, which is this case, the injury, the injury as defined in the Act is an accidental injury. That injury was the knee injury when he fell off the barge. In Sear, and that case has been advanced recently by the Fifth Circuit, in the Amarato-Hess case, they're both in our brief, talk about when it's appropriate to take a secondary, a follow-on incident and connect the presumption of the original injury to that. And in Sear, this court said that has to be the natural and unavoidable consequence of the original injury. And the ALJ in her first decision said it wasn't. Then the board said, oh no, you can't do that. Ignore Sear, look at these other cases and look at what we think, and you're going to have to find this work-related. And our position is her first decision was right. Her first decision is right in almost every respect where she discusses all the evidence. She is a very thorough judge and in two lengthy opinions articulated in great detail the background of the claimant, the injury, what happened after the injury, his long history of unfortunate personal problems. And then she discussed the two experts. And she made her decision, and the board did affirm the ultimate decision, that the claim is not compensable because she relied on the expert testimony of Dr. Busse, who said he had the intent to do this. And if you look at her opinions. I don't understand when you say he had the intent to commit suicide. How can you commit suicide by accident? Your Honor, I don't know, but the statute that I'm trying to satisfy. We have to figure that out because you say he doesn't have the intent to commit suicide. I can't conceive of anybody committing suicide without the intent to commit suicide. I don't know what an accidental suicide is. There are cases discussed in the BRB opinions about people who lost the ability to make that decision. So the courts in those three or four cases concluded. And the others that don't commit suicide don't have that intent? They commit suicide by accident? Your Honor, I'm not certain. What I'm saying is there was a handful of exceptional cases in which courts have found that a person, and again, in those cases, it was based upon expert testimony that an administrative judge or the hearing officer decided to accept. Well, I can understand that you can commit suicide and it isn't the product of your accident. That I can understand. I can understand judges saying that's not the cause of it. It's not caused by the work or by a previous injury. I can understand that. I can't understand a judge saying that suicide is not intentional. But, Your Honor, I'm not here to talk about that case. I'm here to talk about our case and the statute. And the statute says if it is willful intent, it's not compensable. And that's what Judge Gee found. Here's a quote. You know, there is ample evidence that the claimant, and this is what the board cited, there's ample evidence the claimant did not experience impulse, discontrol, but rather he planned and intended to kill himself. And that's another section, that's the discussion section. We have to examine that question as a court. Is that correct, that if you plan to commit yourself, to kill yourself, rather than doing it as an irresistible impulse or immediately, then even though it's caused by the same cause, if it's not an irresistible impulse, but you wait a few hours afterwards, then you don't get compensation. That seems to me to be your position. There may be some cases that support it, but I think it's still an issue we have to resolve. Your Honor, I'm trying to explain. I don't know, I personally, because I haven't had one, but I've read the few cases in which courts have found that a suicide was the result of what they call impulse discontrol. That was the term they used. That's the term that Dr. Roth used. Can I ask a question? Yes, sir. Do you think that impulse discontrol can also involve planning in terms of suicide? I do not believe so, but I am not a psychiatrist, and Dr. Bussey said no, and he's the expert that Judge Gee relied on to find that this was an intentional act that took him outside compensability. Okay, well, there's no question he can decide what he wants to decide as to, did he do this as an irresistible impulse? Did he do it as a result of planning? No, that's fine. The next question after that is, is it only compensable if it's an irresistible impulse, or is it compensable if you've thought about it for a number of hours? That's not a question that he can answer. What is it that he said? Dr. Bussey said that he planned and intended to kill himself, and that's the language that the LJ repeated and the BRB repeated. He said that in the morning he got this idea, and he planned it during the day, right? He didn't say when it started, but it's clear when he kissed his wife goodbye, he intended to do it. He walks over, he tells his aunt and cousins, I'm going to do it. Absolutely consistent with what I said, that in the morning he intended to do it, he planned it, and he didn't do it until later in the day. Because he got talked out of jumping off the mountain, but later in the day he took the gun and he did it. That provided him with the instantaneous? I don't believe it was instantaneous. You know, the impulse to do it. I don't believe it. She picked the expert who said it was not impulsive. There was testimony from their expert, and she explained why she didn't believe it was believable. So she picked, as an administrative judge does, picks between competing opinions. She picked the one that said it's not impulsive. There's plenty of evidence to support that opinion clinically as well as legally, and when that position is made based on a credibility choice, then this court should affirm the judgment that it is not a compensable incident. And first of all, because the board heard the first time in trying and telling her she had to find it to be work-related, her first opinion is the one that really is the clearest and we think correct. But whichever standard you apply, the board and the ALJ agreed it's not compensable. The position for review should be denied. Thank you. Thank you very much. Let me start with a question for you. Do you have a disagreement with counsel's legal argument that it must be an irresistible impulse? Yes. Okay. That is the heart of our disagreement. Okay. I thought that. So this case, because I didn't see any great difference between the two psychiatrists' arguments other than one said it's not an irresistible impulse, it was planned. And you say if their psychiatrist has believed, you're entitled to prevail. Actually, I have to say their expert did not say it was an uncontrollable impulse or an irresistible impulse. He declined to address that. He said that's not a psychiatric question. I don't know what that means. Well, I guess maybe it's a legal question, but I don't know what it means either. And precisely as you say, I don't know how one can put a rifle under his chin and pull the trigger without intending to kill himself. There was certainly an intent to kill himself on Mr. Kialova's part. The dichotomy which their expert understood, I don't know where he got this impression, but he's very clear in explaining what he means at page 264 of the transcript. This is not in the record excerpt, but it's his testimony. More likely than not, this was the end result of what he intended from, I guess, early in the morning, as opposed to, and this is the critical dichotomy as he understood it, and as Mr. Fitzhugh is urging the court, as opposed to none of those thoughts existing before and then out of the blue without any pre-thinking about it or anything else, impossibly grabbing the gun and trying to kill himself. That is a relevant distinction for purposes, something like that anyway, is the relevant dichotomy for purposes of a defense under a suicide exclusion and an insurance policy. It may be relevant under criminal law standards, but it is not the relevant test under the willful intention to kill himself test. I think Judge Pires asked earlier, what is the difference between an intent to kill yourself and a willful intent to kill yourself? That has become a term of art in workers' compensation law. It is a typical statutory provision, not only in the Longshore Act, but most other workers' compensation laws. And as such a term of art for purposes of comp law, it means there is not a chain of causation between the original on-the-job injury and the suicide or suicide attempt. This is indeed probably different from the standard that would be applicable if the suicide or suicide attempt were the original injury. That is not consequential to an admitted traumatic injury. And here, I think the ALJ somewhat minimized it, and Mr. Fitzhugh does the same, but this was an extremely dramatic and serious injury, not only physically. And when finally, over a year after the injury, they get some follow-up on his knee pain, they do an MRI, and yes, there is a bone contusion and deterioration of that knee, and quadriceps atrophy and stiffness through the range of motion of that knee. Serious knee injury and psychological injury resulting from that dramatic fall. He has flashbacks, he has nightmares. He had PTSD or something like it as a result of his childhood experiences already. There is no question that he was retarded, dysfunctional, and traumatized from an early age even before this fall. What kind of suicide would not be intentional? Yes, under the life insurance cases. The person who with no pre-thought, pre-planning, essentially what this doctor understood the test to be here, a suicide attempt that is a momentary impulse and immediate reaction to it in the face of a disordered mind that just can't stop itself. There are cases in which somebody was recovering in the hospital, but they were in great pain, and suddenly with no warning, no prior, no indication there had been any prior thought about it, they jump out the window. And that's not intentional? It has been understood not to be intentional for purposes of... You're saying exactly the opposite, that if it was an irresistible impulse, then it's not compensable, but if it's planned, it is. No, no, no, no, no. Yes, exactly. In the life insurance cases, if there's no pre-planning, yes, you still get the benefits. If it's intentional in the sense that you pre-planned it, then no, you're out of life insurance benefits. You're saying in this field of workers' comp, in effect, if you pre-plan it, you do get it. No, I'm saying it doesn't matter whether it's pre-planned or not. Certainly, if it's not pre-planned, then you don't have willful intention. I agree with that. And there are a couple of cases where the ALJ has been affirmed by the board where they relied on that kind of a standard. You're saying if you don't pre-plan, you're entitled to it because it's intentional? No, because it's not intentional. If it's an irresistible impulse situation, like the person who just suddenly jumps out the window with no pre-planning, yes, that's certainly not even intentional, much less willful intent. But here, we agree this was intentional, but willful intention is a term of art under comp law, meaning it's not traceable to the reduction of your ability to resist that impulse because of the employment injury. And the two tests are very clearly set forth in this. I'm sorry it's 50 years old and it's only a district court, but it is the only judicial authority under the Longshore Act that says what the test is. The only other is the Voris decision from the Fifth Circuit, which said, oh, we don't need to decide because it's compensable either way. But terminal shipping is right on point and describes the two tests and adopts the general workers' comp test that if there's a chain of causation from the employment injury to the inability to resist that suicidal impulse, it is compensable. I thank the Court very much for its attention. Thank you. Thank you both very much. Case disargued is submitted.
judges: Reinhardt, Thomas, Paez